UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSHUA HARDING, Individually
and on behalf of others similarly
situated,

    Plaintiff,

v.                                                    Case No.:  2:22-cv-322-KCD

CHENEY BROS., INC.,

    Defendant.
_____/

## **ORDER**

    This Fair Labor Standards Act case has settled. Before the Court is a Joint Motion for Stipulated Judgment Approving Settlement and Release Agreement. (Doc. 40.) Because this is a collective action, the parties also ask the Court to approve their proposal for notifying potential opt-in plaintiffs. For the reasons below, the Court approves the agreement with one exception—the Court will not retain jurisdiction indefinitely to enforce the settlement agreement.

## **I. Background**

    Plaintiff Joshua Harding worked for Defendant Cheney Bros., Inc. as a Selector. Following his separation, Harding filed this collective action for unpaid overtime wages under the FLSA. The complaint alleges that Harding

was compensated on a piece-rate basis and regularly worked over forty hours in a work week without being compensated for the required overtime premium. (*See* Doc. 1.) The complaint seeks unpaid overtime wages, liquidated damages, and attorneys' fees and costs. (*Id.*)

Defendant did not answer. Instead, the parties requested that the Court stay the case and toll the statute of limitations while they tried to settle. The case was stayed this summer. (Doc. 29.)

Harding has agreed to a settlement and requests the Court's approval of the agreement. (Doc. 40.) The parties explain that several issues were disputed, litigating the case would be expensive and time consuming, and a bona fide dispute existed that led to conciliation. Thus, according to the parties, the settlement is a reasonable and fair compromise. (*Id.* at 5-11.)

As for specifics, Cheney Bros. will pay the total gross amount of $1,410,000. (Doc. 40 at 6.) That sum includes a common fund ($961,000), attorneys' fees ($423,000), costs ($7,483.20), and administration expenses ($16,000). Eligible opt-in plaintiffs include 997 current and former employees.

The parties calculated each plaintiffs' distribution (provided they opt-in) from the net fund based on the number of work weeks they worked overtime during the two-year statute of limitations period during which Cheney Bros. allegedly failed to properly calculate overtime pay. The eligible timeframe for this case is May 19, 2019, through September 13, 2022. The allocation formula

also includes a minimum payment of $100, which affects 617 putative class members who had zero weeks of overtime during which they earned incentive pay. Each opt-in plaintiff will receive their settlement figure by timely returning a completed claim form and becoming a participating litigant (more on that below).

Notably, the allocation formula uses no guessing or estimating. Cheney Bros. produced incentive sheets and payment records for the plaintiffs who have opted-in to date, and a damages model for employees in the position of Selector and Loader based on average back wage amounts owed. In addition, Cheney Bros. produced a sampling of the putative class members time records so that Harding could confirm the damages calculations. Each plaintiffs estimated pro rata settlement amount was projected by taking the per-week share amount times the number of overtime weeks or $100, whichever is higher.

Two more items are relevant to the discussion below. First, Harding executed a settlement agreement that contains a release of claims and a non-publicity provision. (Doc. 40 at 3, 6.) Second, the settlement agreement contains an attorney fee award of 30% of the common fund and $7,483 in costs. (Doc. 40 at 19-20.)

## II. Legal Framework

The FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endanger[ ] the national health and well-being and the free flow of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).[1] If an FLSA violation is shown, the employer must generally pay the damaged employee unpaid wages, an equal amount as liquidated damages, and attorney's fees and costs. *See* 29 U.S.C. § 216(b).

After the Eleventh Circuit decided *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), courts in this district have taken the view that "suits to recover back wages under the FLSA may be settled only with the approval of the district court." *Flood v. First Fam. Ins., Inc.*, 514 F. Supp. 3d 1384, 1386 (M.D. Fla. 2021). The facts in *Lynn's Food* were unique, and it's not clear that the holding was meant to sweep so broadly. *See, e.g.*, *Slaughter v. Sykes Enterprises, Inc.*, No. 17-CV-02038-KLM, 2019 WL 529512, at *3 (D. Colo. Feb. 11, 2019). But no matter how *Lynn's Food* should be viewed, neither party is questioning its applicability here. Thus, the Court will proceed assuming that it must approve the settlement.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

Under *Lynn's Food* and cases applying it, the parties to an FLSA settlement must present their agreement for a fairness evaluation. If the agreement reflects a fair and reasonable compromise of their dispute, the court may approve it. *See, e.g.*, *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307-08 (11th Cir. 2013). There is no standard test or benchmark to measure a settlement's fairness. Courts instead look to various factors, including (1) the existence of collusion behind the settlement; (2) the complexity, expense, and likely duration of the case; (3) the stage of the proceedings and the discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of counsel. *Leverso v. SouthTrust Bank of Ala. Nat. Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994). Courts weigh these factors against a background presumption that the parties reached a fair agreement. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

### III. Analysis

Based on the parties' representations and a review of the docket materials, the Court finds that the agreement here is a fair and reasonable compromise of a disputed claim. Harding (and the proposed collective as a whole) was represented by experienced counsel who had sufficient time and information to evaluate the potential risks and benefits of settlement. While

5

denying liability and raising the specter of several meritorious defenses (Doc. 40 at 9), Defendant has agreed to pay a significant sum to settle.

There is no stated or apparent collusion. Without a settlement, the parties would need to continue discovery, possibly engage in dispositive motion practice, and proceed to trial, and the plaintiffs would risk receiving nothing. The parties and their counsel believe this is a reasonable settlement. (Doc. 40 at 10-11.)

The settlement agreement has no general release. Participating plaintiffs will only release wage and hour claims, which is acceptable. (Doc. 40 at 21-22); *Heath v. Hard Rock Cafe Int'l (STP), Inc.*, No. 6:10-CV-344-ORL-28, 2011 WL 5877506, at *4 (M.D. Fla. Oct. 28, 2011).

As for the non-publicity clause, any concerns are minor considering the agreement has been filed on the public docket and the parties have only agreed that they will issue no press releases regarding the settlement. These terms were negotiated at arm's-length with the advice of counsel and are limited in scope. On these facts, the Court declines to interject itself and disrupt the parties' bargain.

As mentioned, the parties have requested that the Court approve their proposed claim forms to allow for opt-in plaintiffs to join the suit. The Court has reviewed the exhibits and finds them appropriate, save for the jurisdictional reservation discussed below.

6

That brings the Court to the issue of attorney's fees. An award of reasonable attorney's fees is mandated by the FLSA if the employer is held liable. *See* 29 U.S.C. § 216(b). In most FLSA cases, counsel submits time records and the "lodestar method" is applied to decide the appropriate amount of fees. Under this approach, the reviewing court determines the objective value of a lawyer's services by multiplying the hours reasonably expended by a reasonable hourly rate. *See Norman v. Hous. Auth. of City of Montgomery, Ala.*, 836 F.2d 1292, 1298-1304 (11th Cir. 1988). But here, the parties request a different method.

Under the settlement agreement, Plaintiff's counsel will draw their fees and costs from the common fund of $1,410,000, which encompasses all payments to Harding and potential opt-in plaintiffs. Counsel will receive 30% ($423,000) of the common fund. Some courts have rejected this approach as inconsistent with the FLSA. *See Hurt v. RT Pizza, Inc.*, No. 7:20-cv-57 (WLS), 2021 WL 5413668 (M.D. Ga. Feb. 12, 2021). Others, however, have approved percentage payments when the case is a collective action. *See, e.g., Dozier v. DBI Servs., LLC*, No. 3:18-CV-972-BJD-MCR, 2021 WL 6061742, at \*9 (M.D. Fla. Dec. 22, 2021); *Freeman v. Trainingwheel Corp., LLC*, No. 2:19-CV-52-FTM-NPM, 2020 WL 7401488, at \*3 (M.D. Fla. June 26, 2020); *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1380 (N.D. Ga. 2019). The Court finds the latter group persuasive.

7

The FLSA requires judicial review of legal fees to ensure fairness. There is worry that a conflict of interest could taint the employee's recovery if counsel's fees are negotiated simultaneously with the damages award. *See Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). But concerns about fairness are illusory here. Any potential plaintiff who believes the fee arrangement is unreasonable can elect not to participate in the settlement and initiate an independent action. The option to pursue relief without having to pay the negotiated fees undercuts any fairness reservations about the parties' proposal.

Considering the parties' representations, the lack of objection, the results achieved, the skill level required, the experience and reputation of the attorneys, the uncertainty of the claims, and all other relevant factors, the Court finds the fee award of $423,000, constituting 30% of the common fund, is fair and reasonable. *See Mosley*, 2021 WL 293243, at *4. And even if the parties did not negotiate the attorney's fees separately, a fee award representing 30% of the common fund is appropriate on the facts presented. *See Freeman*, 2020 WL 7401488, at *3 ("[T]he FLSA does not require the Court to conduct an in depth analysis [of any attorney fee award] unless the unreasonableness of such award is apparent from the face of the documents."). The Court similarly finds the requested costs, which are nominal, to be reasonable.

One final matter. The parties' settlement states: "The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of the Settlement and all orders and judgments entered in connection therewith, and the Parties and their Counsel shall submit to the jurisdiction of the Court for the purposes of interpreting, implementing and enforcing the settlement embodied in this Agreement and all orders and judgments entered in connection therewith." (Doc. 40 at 23.) But this Court is generally reluctant to retain jurisdiction for an indefinite period over matters such as this. *See Popov v. George & Sons Towing Inc.*, No. 2:12-cv-123-FtM-39UAM, 2013 WL 4028208, at *1 (M.D. Fla. Aug. 7, 2013). Because there is a notice period here, the Court will retain jurisdiction for a limited amount of time to correspond with the claims processing period.

Accordingly, it is **ORDERED**:

1. The parties' Joint Motion for Approval of Settlement (Doc. 40) is **GRANTED** and the proposed settlement is approved save for the limitation discussed immediately above. The parties may either interlineate the settlement agreement or submit a new version that properly reflects the Court's jurisdictional reservation.

2. The proposed Notice and Claim Forms and the proposed method for distribution of those documents is also approved. The parties must ensure that the notice and claim forms have the correct case number.

9

3. The Court will keep this matter open and retain jurisdiction until notified by the parties that the claims period has expired;

4. Sixty-days following this order, and every sixty-days thereafter, the parties must file a joint notice reporting on the status of the claims process.

**ORDERED** in Fort Myers, Florida this November 4, 2022.

Kyle C. Dudek
United States Magistrate Judge

Copies: All Parties of Record